## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MLS-MULTINATIONAL LOGISTIC
SERVICES LTD.,

                  Plaintiff,

    v.

EDWIN MYHRE, et al.,

                  Defendants.

Case No. 20-cv-2116 (JMC)

## <u>MEMORANDUM OPINION</u>

Plaintiff MLS-Multinational Logistic Services, Ltd. (MLS) brought this diversity-jurisdiction action against Edwin Myhre and his employer Global Defense Logistics, SRL (GDL) (collectively, Defendants), alleging that Defendants tortiously interfered with its business relationship with the United States Navy.[1] Defendants have moved to dismiss MLS's First Amended Complaint, ECF 16, for lack of standing, among other grounds. ECF 18. The Court agrees that MLS's Complaint does not satisfy the threshold requirements of standing and thus grants Defendants' Motion.

## I.     BACKGROUND

MLS's relevant allegations are as follows. MLS is a maritime husbanding services provider. ECF 16 ¶ 6. "Husbanding" refers to arranging port visits for ships and providing the services and logistical support that vessels require in port. *Id.* ¶ 10. Because Navy ships visit ports

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

worldwide, the Navy relies on husbanding services to support its operations and awards contracts to providers through competitive bids. *See, e.g.*, *id.* ¶¶ 10–12. MLS is a longtime Navy contractor and apparently derives much of its business from the Navy. *Id.* ¶¶ 2, 12. From 2018 until the filing of this action, it had secured at least 500 Navy contracts, worth over $40 million. *Id.* ¶ 12. Defendant GDL provides the same types of husbanding services, also contracts with the Navy, and is MLS's main competitor. *Id.* ¶¶ 8, 22.

MLS's suit arises from changes the Navy decided to make in 2017, concerning its relationships with ports and its contract solicitations. As background, in September 2017, the Navy issued a solicitation seeking offers for the provision of husbanding services that included "port tariff items" (*e.g.*, pilots, tugs, and line handles). *Id.* ¶ 13. According to MLS, applicable regulations allow port authorities to contract only with a ship's owner or agent for these port tariff items. *Id.* ¶ 14. But in 2017, the Navy stopped contracting directly with ports, instead requiring the husbanding services providers to do so. *Id.* However, the contract solicitation also included language making it clear that the provider was "NOT an agent of the U.S. Navy and does not have the authority to bind the U.S. Navy." *Id.* ¶ 15.

MLS alleges that this conflict put it in an "untenable situation." *Id.* ¶ 16. Because port authorities can only contract with a vessel's agent or owner, MLS argues that it must be able to hold itself out as the Navy's agent to work with ports and provide the services required under the contracts. But the contract solicitation language prohibits it from representing that it is the Navy's agent. According to MLS, then, it has to "either violate the local laws and regulations of the port by falsely presenting itself as an agent of the Navy or breach the contractual obligations it owe[s] to the Navy," *id.*, and neither are viable options. MLS acknowledges that it secured Navy contracts under the 2017 solicitation, *id.* ¶ 20, but the First Amended Complaint provides two examples in

which it was denied entry to ports, and thus could not get paid under the contract, because it told port authorities that it was not the Navy's agent consistent with the contract's language. *Id.* ¶¶ 24, 26.

MLS has tried, informally and formally, to resolve this conflict with the Navy. It first sent informal correspondence to the Navy and then submitted a bid protest to the Government Accountability Office (GAO), objecting that the contract was impossible to perform. *Id.* ¶¶ 17–20. Those efforts led nowhere. *Id.* ¶ 20. So, MLS filed a bid protest action in the Court of Federal Claims seeking an order to compel the Navy to revise the contractual language. *Id.* ¶ 21; *see also MLS-Multinat'l Logistic Servs., Ltd v. United States*, 143 Fed. Cl. 341, 376 (2019).

Days after MLS filed its bid protest action, its competitor GDL moved to intervene in the case. ECF 16 ¶ 22. GDL had also secured a Navy contract under the 2017 solicitation and argued to the court that as a contract awardee it had an "'economic interest' in ensuring that the Navy did not revise the 2017 Solicitation language[,]" *id.*, thus supporting the Navy's position in the case. In a later filing opposing MLS's bid protest, GDL submitted a declaration from one of its employees, a retired Navy captain, Edwin Myhre. *Id.* ¶¶ 27–28. According to MLS, Myhre had no expertise relevant to the matter and falsely opined that there is a distinction between a "'General Agent' who has the legal authority to bind a vessel and the terms 'agent' or 'agency,' which are used colloquially in the maritime industry and do not connote the legal relationship created by a General Agency Arrangement." *Id.* ¶ 28. MLS alleges that GDL inserted itself in the bid protest action in a "transparent attempt to secure more contracts from the Navy at MLS's expense," and that its litigation position was baseless. *Id.* ¶ 23.

The Court of Federal Claims ultimately dismissed MLS's case for lack of subject matter jurisdiction, *id.* ¶ 32, but MLS maintains that it has been harmed by the arguments GDL made in

3

that litigation. In 2019, the Navy issued another contract solicitation for husbanding services that included the same language about providers not being agents of the Navy that MLS previously challenged. *Id.* ¶ 34. That led to MLS filing another bid protest with the GAO, the Navy making some revisions to the contract language, a subsequent bid protest filing, and more back and forth between MLS and the Navy—the details and resolution of which are not all that important for the Court's purposes. *See id.* ¶¶ 34–40. However, in defending itself against MLS's protests, the Navy cited to and relied upon Myhre's declaration, including by parroting some of the declaration's language in its revised solicitation to incorporate Myhre's distinction between a "General Agent" and the more colloquial understanding of the term "agent" in the maritime industry. *Id.* ¶¶ 36–39. "[A]rmed with the Myhre declaration," the Navy continued to take the position that "MLS should have no issues performing under the husbanding contracts" and "continuously decline[d] to amend the solicitation language." *Id.* ¶ 39.

In sum, MLS is upset that GDL intervened in its court case, that Myhre submitted a declaration that it disagrees with, and that the Navy has relied on that declaration to defend itself against MLS's challenges. MLS claims that Defendants' conduct has prolonged its dispute with the Navy and puts it at risk of losing future contracts to GDL. *Id.* ¶ 40. MLS has sued Defendants for tortious interference with its prospective economic advantage and business relations because they intervened in a court case, and wants the Court to force Defendants to retract their declaration, admit that the position they took in the prior litigation was wrong, and award MLS any damages to which it may be entitled.

## II.   LEGAL STANDARD

Defendants have moved to dismiss this case on many grounds, but the Court must decide whether MLS has standing to sue first. *See, e.g.*, *Steel Co. v. Citizens for a Better Environment*,

523 U.S. 83, 94 (1998). A motion to dismiss for lack of standing is a challenge to the Court's subject matter jurisdiction under Federal Rule of Procedure 12(b)(1). *See Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). In resolving such a motion, the Court must "accept all of the factual allegations in the complaint as true." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). But the Court more closely scrutinizes a plaintiff's factual allegations in resolving a motion to dismiss under 12(b)(1) than it does for motions to dismiss brought under other federal rules. *See, e.g.*, *Ross v. U.S. Capitol Police*, 195 F. Supp. 3d 180, 191 (D.D.C. 2016). Ultimately, it is the plaintiff's burden to establish the Court's subject matter jurisdiction. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).

## III.   ANALYSIS

MLS lacks standing to sue Defendants. As the Parties well know, Article III of the Constitution limits this Court's power to the resolution of "cases" and "controversies." U.S. Const. art. III, § 2. Standing is one element of the case-or-controversy requirement. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To demonstrate it has standing, MLS must satisfy three elements: injury-in-fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). MLS's failure to establish "any one of these three elements defeats standing," *Newdow v. Roberts*, 603 F.3d 1002, 1010 (D.C. Cir. 2010), and requires dismissal of its Complaint.

MLS's Complaint falls short of satisfying any of the requirements of standing. First, MLS does not allege a cognizable, non-speculative injury-in-fact. To do so, MLS would have to plead "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. For any threatened injury, MLS would need to demonstrate that the injury is "certainly impending" or that there is "a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158

5

(2014) (quoting *Clapper*, 568 U.S. at 414 n.5). MLS has not done that. Instead, its Complaint alleges that the Navy's reliance on Defendants' declaration creates some "likelihood that MLS will not be able to adequately complete its Navy contracts" at some unspecified point in the future. *See, e.g.*, ECF 16 ¶¶ 51, 54. This is precisely the type of "[a]llegation[] of possible future injury" that the Supreme Court has instructed "do[es] not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (2008). The Complaint makes clear that the Navy has continued to award MLS lucrative contracts despite the various bid protest disputes. *See, e.g.*, ECF 16 ¶¶ 12, 33. And the only examples MLS provides of instances in which it claims it lost money (*i.e.*, suffered an actual, concrete, and non-speculative injury) because of the conflict created by the contract involves the language of the 2017 solicitation—which the Navy drafted and issued well before Defendants' declaration. *See id.* ¶ 24.

That brings the Court to the second problem with MLS's claims. Even if the Court concluded that MLS alleged an injury-in-fact, it has not established that Defendants caused it. To satisfy the causation element of standing, MLS must demonstrate that its alleged injuries are "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] resul[t] [of] the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976). Although MLS claims that the "conflict created by the language in the solicitations" was the "direct result of GDL's misconduct," ECF 16 ¶ 40, this conclusory assertion is not supported by the Complaint's allegations. The Complaint makes clear that the conflict arose before and exists independently from Defendants' purported conduct in the bid protest litigation. The Navy included the language MLS believes is problematic in its 2017 solicitation, before GDL intervened in MLS's bid protest. *Id.* ¶¶ 15, 21–22. The Complaint does not allege that Defendants had anything to do with that solicitation. The Navy did not change its position after MLS initially

flagged the purported conflict for it. *Id.* ¶ 17. Again, the Complaint does not allege that Defendants had any involvement in those discussions. And the Navy defended itself against MLS's first bid protests before the GAO, again before GDL's involvement in any litigation. *Id.* ¶¶ 18, 20. At best, MLS's claim is that Defendants offered additional support for a position the Navy had already taken. And MLS offers nothing to rebut Defendants' common-sense argument that the Navy, a branch of the United States military represented by its own counsel, is responsible for its own litigation positions.

Finally, MLS has not demonstrated that any of its claimed injuries will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38). An injury is not redressable where "a non-party's conduct was the most direct cause of the alleged injury," *Ams. for Safe Access v. Drug Enf't Admin.*, 706 F.3d 438, 447 (D.C. Cir. 2013), particularly if the plaintiff "offers nothing but speculation to substantiate [its] assertion that a favorable judicial decision would result in [a third party] altering their independent choices," *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 933 (D.C. Cir. 2004). Here, MLS wants the Court to order Defendants to retract Myhre's declaration and admit that their position is wrong. *See, e.g.*, ECF 16 ¶ 56. But what would that do? The Complaint makes no allegation "sufficient to demonstrate a substantial likelihood that the third party directly injuring the plaintiff [(*i.e.*, the Navy)] would cease doing so as a result of the relief the plaintiff sought." *Renal Physicians Ass'n v. U.S. Dep't of Health & Hum. Servs.*, 489 F.3d 1267, 1276 (D.C. Cir. 2007). The Court cannot order the Navy, a non-party, to change the solicitation language or resume contracting directly with port authorities through this litigation. And the Court is not sure that it can order Defendants to retract a declaration filed in another case (that is closed). But even if Defendants were to claw back their declaration and confess error, the Navy could very well continue taking the position it

has maintained since 2017, before Defendants intervened in the subsequent litigation, and include the challenged language in future contract solicitations. It can continue to draw a distinction between "General Agent" and "agent," even without corroboration from Defendants. The Complaint includes no allegations suggesting that a court order here would compel the Navy to do otherwise. Indeed, the Complaint alleges that the Navy has vigorously defended itself against MLS's many challenges, independent of Defendants' involvement in the (dismissed) bid protest litigation. MLS's issue is with the Navy. The Navy is not a party in this case, so there is nothing the Court can offer MLS to resolve its real concern about the contract solicitation language.

## IV. CONCLUSION

MLS has not met its burden of establishing that it will suffer an injury-in-fact causally connected to Defendants' actions that can be redressed in this litigation. Accordingly, the Court finds that MLS does not have standing and thus dismisses this case.

**SO ORDERED.**

DATE: December 6, 2023

_____
JIA M. COBB
U.S. District Court Judge